**In re Marvin Thomas BUSH, Debtor.**

**The ESTATE of Emmit E. CONN, by Barbie BOW, Executrix, Plaintiff,**

**v.**

**FIRST NATIONAL BANK OF PIKE-VILLE; Lucinda Masterton Hall, Trustee, Defendants.**

**Bankruptcy No. 92–70487.
Adv. No. 92–7027.**

United States Bankruptcy Court,
E.D. Kentucky,
Pikeville Division.

Sept. 24, 1993.

James B. Ratliff, Pikeville, KY, for plaintiff.

H. Edward Maddox, Pikeville, KY, for defendant First Nat. Bank of Pikeville.

Lucinda Masterton Hall, Lexington, KY, trustee.

### MEMORANDUM OPINION

WILLIAM S. HOWARD, Bankruptcy Judge.

This matter came before the Court for trial on August 11, 1993, and was submitted for decision at the conclusion thereof. The parties agree that the issue in this matter is the attachment and perfection of a lien of defendant First National Bank of Pikeville ("the Bank") on certain items of the debtor's personal property.

### Findings of Fact

The evidence offered at trial, including relevant documents, transcripts, and the Joint Stipulation entered into by the parties elicited the following facts: The debtor filed his Chapter 7 petition in this Court on October 5, 1992. Another entity, Marvin T. Bush, D.M.D., P.S.C., filed a Chapter 11 petition on the same date. The plaintiff is an unsecured creditor of the debtor, having filed a timely proof of claim in this case on December 7, 1992. The claim is for the recovery of the sum of $92,094.26 plus 10.62% interest from October 5, 1992, which is due under a promissory note dated January 1, 1986, payable to the order of Emmit E. Conn by Marvin Bush in the

original amount of $86,882.39. Emmit E. Conn died on September 22, 1992.

The Bank filed its proof of claim on November 23, 1992, alleging that it was a secured creditor of the debtor. The Bank alleged a security interest in personal property set forth in a financing statement dated February 16, 1989, and filed of record in the office of the Floyd County Clerk, File No. 89–0665. On February 16, 1989, the debtor maintained residences in Floyd County and Fayette County. The debtor practiced dentistry in Pike County.

On February 16, 1989, Marvin T. Bush, DMD, PSC, was a professional corporation, incorporated pursuant to the provisions of KRS Chapter 274, the Kentucky Professional Services Corporation Act, on February 3, 1989. The principal place of business of the PSC was the debtor's office in Pikeville. Marvin T. Bush was the incorporator and sole shareholder. The PSC was administratively dissolved on December 5, 1990.

The Bank's financing statement identifies the debtor as Marvin T. Bush, DMD. The address noted thereon is his office address, 538–540 South Mayo Trail, Suite 101, Pikeville, Kentucky. The face of the financing statement indicates that the debtor granted the Bank a security interest in described property all used in connection with his dental practice. In addition to equipment and furnishings, the debtor granted a security interest in accounts receivable, accounts, notes, drafts, grants and other forms of obligation. The parties agree that the accounts receivable are owned by Marvin T. Bush, DMD, PSC, the corporate debtor.

*Conclusions of Law*

■ This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b); it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). The issues of attachment and perfection of security interests are governed by KRS Chapter 355, in particular KRS 355.9–204 and 355.9–401. KRS 355.9–204(1) provides that a security interest attaches when there is an agreement that it attach, value is given, and the debt-

or has rights in the collateral. The plaintiff contends that the Bank's security interest could not attach to any item of property acquired by the corporate debtor, since the individual debtor would not have any rights in the collateral.

In *In re Beaver Dam Grain, Inc.*, 43 B.R. 283, 285 (Bkrtcy.W.D.Ky.1984), the court considered a case in which a security agreement and financing statement covering certain goods arose between two parties, one of which controlled the debtor. The other party sold goods to the debtor. Three years after the filing, the party controlling the debtor transferred its operations to an unrelated entity. The unrelated entity was not a party to the security agreement or the financing statement, but the seller continued to sell goods to the debtor. The court ruled that the seller's security interest in the goods it sold to the debtor never attached because there was no agreement between the parties.

In coming to this conclusion the court cited with approval both *Matter of Serrins Automotive Warehouse, Inc.*, 18 B.R. 718 (Bkrtcy.W.D.Pa.1980) and *In re Kittyhawk Television Corp.*, 516 F.2d 24 (6th Cir. 1975), *inter alia*, for the proposition that transferring title to collateral or changing the name or form of the debtor's corporate structure does not destroy a perfected security interest. The court pointed out that in such cases courts have "... allowed a security interest to be asserted against a 'successor' entity because it was merely the original debtor with a new name." The court also agreed that security interests remain valid "... where the original debtor had changed only its legal business form or both its name and form." *Id.*, at page 285.

■ In the case at bar this Court is not faced with completely unrelated entities, or with a change in the name or form of corporate structure. However, the Court believes that the second scenario is more applicable. The debtor herein was the incorporator and sole shareholder of the corporate debtor. The security agreement and financing statement clearly referred to the debtor's dental practice. The connec-

tions are many and consistent. Third parties could not fail to be put on notice that the Bank was claiming a security interest in personal property of the debtor as it related to his dental practice, whether he was identified as an individual or a PSC.

 It therefore appears to this Court that a security interest attached in all the items covered by the security agreement. However, this Court further concludes that the Bank did not properly perfect its security interest in the items covered by the security agreement. In 1989, when the security agreement was filed, KRS 355.9–401 was in its present form, having been amended in 1987, and it provides in pertinent part as follows:

(1) The proper place to file in order to perfect a security interest is as follows:

.    .    .    .    .

(c) In all other cases, if the debtor is a resident of this state in the office of the county clerk in the county of the debtor's residence ...

.    .    .    .    .

(5) For purposes of this section:

(a) An individual for whom filing is controlled by subsection (1)(c) of this section shall be deemed a resident of the county in which the debtor's principal place of business in this state is located.

It is uncontroverted that the debtor's principal place of business was in Pike County. This is true whether in reference to the individual debtor or the corporate debtor. As set out above, the individual debtor, Marvin Thomas Bush, is a dentist who practices his profession in Pike County. The security agreement concerns equipment and accounts of the dental practice in the Pike County location. The proper place for filing the financing statement was Pike County.

 In consideration of all of the above, it is therefore the opinion of this Court that the rights and powers of the Trustee pursuant to 11 U.S.C. § 544(a) place the Trustee in a position superior to the unperfected lien of defendant First National Bank of Pikeville as regards the items of personal property set out in the subject security agreement. An order in conformity with this opinion will be entered separately.